

FILED
JUL 0 8 2010

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| LINDA O' GRADY, | ) | 10-4087 |
| Plaintiff, | ) | |
| vs. | ) | COMPLAINT |
| FIRST NATIONAL BANK OF OMAHA, | ) | |
| Defendant. | ) | |

Comes now Linda O'Grady, the Plaintiff named above and for her Complaint, alleges and states as follows:

**JURISDICTION**

1. Linda O'Grady ("O'Grady") is an adult female who resides in Yankton, South Dakota.

2. First National Bank of Omaha ("First National") is a subsidiary of First National of Nebraska that operates a call center for credit card services out of Yankton, South Dakota.

3. First National employees over 500 people.

4. On September 21, 2009, O'Grady filed a charge of discrimination alleging disability discrimination under the Americans with Disabilities Act ("the ADA") with the South Dakota Division of Human Rights.

5. On February 2, 2010, the South Dakota Division of Human Rights issued its Determination of Probable Cause, finding that there was probable cause to believe that O'Grady's allegations of disability discrimination under the ADA were well-founded.

6. On April 16, 2010, the EEOC issued a Notice of Right Sue to O'Grady.

7. This Court has jurisdiction of this federal question case pursuant to 28 USCA § 1331.

## FACTUAL ALLEGATIONS

8. O'Grady was first employed by First National beginning in August 1997.

9. O'Grady was qualified for employment at First National and worked for First National for over ten years prior to her termination.

10. During her employment, First National consistently rated O'Grady's performance as "meeting expectations." First National did not document any performance issues with O'Grady's performance during her final year of performance.

11. O'Grady suffers from anxiety, depression, panic disorder and agoraphobia.

12. O'Grady's medical condition is a long-term or permanent condition that substantially limits major life activities including her sleep, cognitive function, interaction with others, work and concentration.

13. First National was aware of and accommodated O'Grady's medical condition during her employment.

14. In August 2006, O'Grady exercised FMLA leave because of symptoms related to her medical condition. Employees in First National's Yankton branch encouraged her to exercise FMLA leave.

2

15. From June 2007 to May 2008, O'Grady exercised long term disability ("LTD") leave because of symptoms related to her condition. Employees in First National's Yankton branch encouraged her to exercise LTD leave.

16. During her LTD leave, O'Grady made several contacts with First National to advise it of her medical condition and her plans to return to work at First National.

17. During her leave, First National's Yankton employees placed her personal items in storage in anticipation of her return to work.

18. In June 2008, First National's disability carrier sent O'Grady a letter advising her that she was being denied LTD leave as of May 31, 2008.

19. O'Grady and her physician appealed the decision to terminate her LTD leave.

20. O'Grady's disability claim file was reopened after May 2008 while O'Grady submitted information to First National's disability carrier about her eligibility for LTD leave.

21. In August 2008, O'Grady received a notice from First National advising her that her employment had been terminated as of May 31, 2008.

22. In response to this letter, O'Grady immediately called First National's Human Resources ("HR") office in Omaha about her employment status and was initially advised by a First National HR employee that she was terminated because she had failed to keep up with payments on a First National life insurance policy.

23. When O'Grady questioned the HR employee about why O'Grady would be terminated for not participating in a supplemental, voluntary benefit, the First National HR employee responded: "I see you were on long term disability."

24. When O'Grady confirmed that she had been on LTD leave, the First National HR employee informed O'Grady that she had been terminated for using long term disability leave pursuant to a First National policy to terminate any employee who exercised LTD leave.

25. O'Grady began to cry during the phone call and this prompted the First National HR employee to advise O'Grady that her employment record showed that O'Grady was a "voluntary quit" because that is how First National documents employees discharged for using LTD leave. According to the First National HR employee, this notation in her record would permit O'Grady to apply for open positions at First National.

26. The First National HR employee represented that O'Grady would not qualify for a First National "bridge" policy for employees who are gone from work for a period of time and intend to return to their jobs because the First National "bridge" policy was not available to employees who use LTD leave.

27. In December 2008, O'Grady began to apply for advertised, open positions at First National. O'Grady submitted applications on December 19, 2008 and continued applying through January, April, July and August 2009.

28. O'Grady also submitted a statement from her physician to First National that medically cleared O'Grady for work.

29. Each time O'Grady applied for an advertised position in 2008 and 2009, she was advised that she was not selected for the position she applied for.

30. The positions O'Grady applied for remained open and continued to be advertised even after she was notified that she was not selected for the position.

31. Applicants and employees who did not have a disability were treated differently and given preferential treatment in the hiring process as compare to O'Grady.

32. To the best of her knowledge, the persons ultimately hired for the positions O'Grady applied for did not have disabilities or were not perceived to have disabilities.

33. After O'Grady filed her charge of discrimination, First National began representing that O'Grady was not hired because of alleged performance issues and otherwise misrepresented O'Grady's performance record in a pretextual manner to the South Dakota Division of Human Rights.

### COUNT ONE: ADA Disability Discrimination in Employment
### 42 USCA § 12112(a) et seq.

34. O'Grady suffers from a disability because of her depression, anxiety, panic disorder and agoraphobia.

35. O'Grady was qualified to perform the essential functions of the positions she applied for at First National, with or without accommodations.

36. First National perceived O'Grady as a person with a disability because she had exercised FMLA leave and LTD leave during her employment.

37. First National terminated O'Grady's employment in 2008 because she is a person with a disability.

38. In 2008 and 2009, First National refused to hire O'Grady for positions that she was qualified to perform because she is a person with a disability.

39. First National intentionally treats applicants without disabilities differently than employees with known disabilities.

40. First National's termination of O'Grady because of her disability and use of disability leave was intentional.

41. First National's refusal to re-hire or hire O'Grady because of her disability was intentional.

42. First National intentionally misrepresented O'Grady's performance record in retaliation for O'Grady filing a charge of discrimination.

As a result of First National's discriminatory actions, O'Grady has suffered the following damages:

    a. Loss of employment;

    b. Loss of employment benefits;

    c. Emotional distress; and

    d. An exacerbation of medical symptoms related to her disability.

WHEREFORE, O'Grady prays for judgment against First National as follows:

a. For a trial by jury on the merits of her claim;

b. For compensatory damages in such amount as the evidence at trial may show;

c. For other damages, including but not limited to, those damages allowed by 42 U.S.C. §12101 *et seq.* and any other pertinent and applicable statutes, rules or regulations, whether state or federal.

d. For her reasonable costs and disbursements incurred, including prejudgment interest and reasonable attorney fees, and for such other and further relief as the Court may deem just.

Dated this 7th day of July, 2010.

JOHNSON POCHOP LAW OFFICE

_____
Stephanie E. Pochop
P.O. Box 149
Gregory, SD 57533
(605) 835-8391
johnson@gwtc.net
Attorney for Plaintiff Linda O'Grady